(115 App. Div. 333)

### PORTER v. MAGNETIC SEPARATOR CO.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. MONEY LENT—EVIDENCE—SUFFICIENCY.

In an action for money loaned to a company, evidence examined, and *held* to show that there was a loan to the company to be repaid when it was able to do so.

2. LIMITATION OF ACTIONS—DEFENSE—BURDEN OF PROOF.

A defendant, in an action for money loaned to be repaid when he is able to do so, who sets up limitations as an affirmative defense, has the burden of showing that he had the financial ability to pay more than six years before the commencement of the action.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, §§ 711–716.]

3. SAME—ACCRUAL OF CAUSE OF ACTION—EVIDENCE.

In an action against a company for money loaned under an agreement to repay when able to do so, the company pleaded limitations, and introduced in evidence the annual reports of its directors, including the creditor, for more than six years before the action, showing that the company had assets worth $230,000 and debts amounting to $15,000. *Held*, that the creditor was entitled to show the condition of the company at the time the reports were made and prove that the assets of the company were not available to pay debts.

4. APPEAL—ERRONEOUS ADMISSION OF EVIDENCE—HARMLESS ERROR.

Where, in an action for money loaned to a company under an agreement to repay the same when able, it failed to show its ability to repay more than six years before the commencement of the suit, the error in admitting letters of the company's treasurer written within six years of the commencement of the action showing that the company was unable to pay was harmless.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 4153–4161.]

5. MONEY LENT—SET-OFF AND COUNTERCLAIM—PROOF OF COUNTERCLAIM.

In an action for money loaned, evidence *held* to sustain a finding against a counterclaim set up by defendant.

Laughlin and Houghton, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Alexander T. Porter against the Magnetic Separator Company. From a judgment entered on a verdict for plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

H. D. Bailey, for appellant.
F. E. Holloway, for respondent.

PATTERSON, J.   In an action for money loaned by one Clinton M. Ball, the plaintiff's assignor, to the defendant, the plaintiff recovered a judgment; and from that judgment, and from an order denying a motion to set aside the verdict and for a new trial, the defendant appeals.

It is alleged in the complaint that the loan was made on the 10th day of January, 1890, and it is conceded in the record that the action was not brought until the 5th day of January, 1904.   It is further alleged in the complaint that the loan was made upon an agreement that it was to be used as working capital by the defendant, which is a corporation organized under the laws of the state of New York, and was to be repaid, either upon demand or as soon before demand as the finances of the defendant would permit of the payment of the same.   The defendant, in answering, set up the six-year statute of limitations, and then, as a second separate defense, it averred that the amount mentioned in the complaint was not a loan to the defendant, but was a payment made by the plaintiff's assignor in fulfillment of a contract which he had made with one Ide, by which Ide was to purchase stock from Ball, and $1,000 of the purchase money paid therefor was to be given by Ball to the defendant.   For a further partial defense and as a counterclaim, the defendant also set up that on or about January 10, 1890, the defendant purchased from Ball, the plaintiff, and a third party certain articles of personal property, including a machine made by W. H. Tollhurst & Son, of Troy, N. Y.; that by the contract of purchase the plaintiff, Ball, and the other party undertook and agreed to deliver the property so purchased without further cost to the defendant; that that agreement was not performed; that at the time of the purchase Ball and the plaintiff knew that there was owing to Tollhurst $849 on account of the construction of the machine; that the defendant was compelled to pay that sum in order to get possession of it, and the counterclaim is for that amount thus paid.   It was also alleged in the answer that within six years after that payment Ball removed from the state of New York and has been a nonresident ever since, and those facts were proven at the trial.

On the issue concerning the nature of the transaction, there was evidence to support the allegations of the complaint.   At the time the money was paid in to the defendant its treasurer gave a receipt therefor in the following words:

"Troy, N. Y.   January 10, 1890.   Received from Clinton M. Ball, one thousand dollars, being amount loaned to this company for working capital.   The Magnetic Separator Company, John H. Tupper, Treas."

That receipt has been referred to as a note, and the defendant claims that the action is based upon it.   That is not so.   The paper is only an acknowledgment of the receipt of the money and a statement of the purpose to which it was to be applied.   The testimony of the plaintiff and of Ball is to the effect that at a meeting of the directors of the defendant held at about the time the money was advanced it was agreed that the three parties should each loan $1,000 to the company, and

there is evidence to the effect that it was part of the agreement "that the money would be repaid as soon as the company was in a condition of financial ability to repay it." The evidence established that there was a loan of money to be repaid when the company was able to do so.

Such being the nature of the transaction, and the defendant having set up the statue of limitations as an affirmative defense, it was incumbent upon it to show that the statutory bar applied, and that could be done by proving, at least, that it had the financial ability to pay more than six years before the commencement of the action. By the terms of the contract the loan was continued indefinitely until the company had sufficient ability to pay, and the defendant was under the obligation to show everything necessary to set the statute running. The defendant sought to make such proof by introducing in evidence annual reports made by the directors of the defendant, including Ball, for the years 1893 and 1894, in which they reported that the company was possessed of assets of the value of $230,000, and that it had $15,-000 debts. The plaintiff showed the real condition of the company at the time those reports were made and the items of which such assets consisted, namely, patent rights which had been assigned to the company for a consideration of $200,000 and various contracts, and facts from which the inference is deducible that such assets were not available for the purpose of paying debts. The introduction of that proof was objected to, but was admissible under the authority of Tebo v. Robinson, 100 N. Y. 27, 2 N. E. 383, which was an action upon a promise to pay a debt when the debtor was able. The statute of limitations was pleaded, and the court said, among other things: "It may be assumed that the case made by the defendant prima facie established the fact of his ability to pay the plaintiff's debt prior to November, 1875"—when the action was commenced. The defendant in that case had kept a bank account which fluctuated, and he also was the owner of a seat on the Stock Exchange, which was worth $5,000, but the court held that the bank account and the ownership of the seat in the Stock Exchange was not inconsistent with an inability to pay the debt prior to November, 1875; and that a question of fact for the jury was presented. Hence the reports in evidence in the case at bar were not conclusive.

There is no other affirmative evidence on the part of the defendant to show that it was in a condition to pay this debt unil 1897. Ball was connected with the company until 1897, and his testimony is to the effect that the company was not able to pay up to that time. The defendant was bound to, but did not show its ability to, pay at any time, which would have set the statute running. At the trial there were admitted in evidence, under objection and exception, certain letters written in 1893, 1896, and 1900 by the treasurer of the defendant tending to show that company was not able to pay its debts in the course of business, and it does not appear anywhere that Tupper had authority to make declarations or statements to bind the company. But the error, if any exists, in allowing those letters to be read, is harmless, in view of the obligation resting upon the defendant to show affirmatively its ability to pay and its failure to do so.

As to the counterclaim, it appears in evidence that · Porter independently and personally advanced to the company $1,000 as a loan and received therefor a receipt similar in its terms to that given to Ball, upon which this action is founded. It was proven that if any one was responsible for the amount of this counterclaim it was Porter, but he testifies that, when he advanced his $1,000 to the company, he asked the president, Mr. Ide, for a receipt, and Ide stated that he could not give it, inasmuch as there was the indebtedness of $849 due to Tollhurst; but in a subsequent conversation upon the subject Porter told Ide that it must be clear to his mind that previous to the organization of the company he, Porter, had told them that the indebtedness existed and that it was agreed between them that the company should pay that bill and assume that indebtedness, to which Mr. Ide responded that he failed to remember that. However, a receipt was subsequently given, and thereafter the amount of the loan was paid to Porter by the company in full, with interest, and nothing was claimed and nothing deducted for the indebtedness which was alleged to be due to Tollhurst. The court instructed the jury that it was for them to determine from the evidence whether or not the understanding was that the machinery was to be free and clear from incumbrance; and there was no exception taken to that instruction.

We have examined the exceptions and do not find that any of them is of such a character as to require a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs. All concur, except LAUGHLIN and HOUGHTON, JJ., who dissent.